RICHMOND SAFETY GATE CO. v. ASHBRIDGE et al.

(Circuit Court E. D. Pennsylvania. May 28, 1902.)

1. MUNICIPAL CORPORATIONS—EXERCISE OF POLICE POWERS—INJUNCTION AGAINST ENFORCEMENT OF UNREASONABLE REGULATIONS.

Act Pa. May 5, 1899, providing that cities of the first class may by general ordinance regulate the management and inspection of elevator hoistways and elevator shafts in said cities, does not confer power on the councils of a city to condemn without inspection, and by a general regulation, an entire class of elevator appliances, and to require their removal wherever found, whether such regulation is adopted by ordinance or by the bureau of building inspection under authority given by ordinance; and a manufacturer of such appliances is entitled to an injunction to restrain the enforcement of such a regulation as unreasonable, where it will work irreparable injury to him if enforced.

2. SAME—DISCRETION OF OFFICERS—CONTROL BY INJUNCTION.

A court of equity will not undertake by a general injunction to direct or control the building inspectors appointed by a city in the exercise of their judgment in specific cases on which they may be called upon to act in the future.

In Equity. Suit for injunction.

Thomas R. White, for complainant.

John L. Kinsey and Norris S. Barratt, for respondents.

DALLAS, Circuit Judge. The plaintiff is a corporation of the state of Indiana engaged in the manufacture of "Full Automatic Gates" for use in connection with freight elevators, and these gates

¶ 2. See Injunction, vol. 27, Cent. Dig. § 146.

it sells and erects throughout a considerable part of the United States and elsewhere. A Pennsylvania statute of May 5, 1899, provided that cities of the first class might, by general ordinance, regulate the management and inspection of elevator hoistways and elevator shafts in said cities; and on April 6, 1900, an ordinance of the city of Philadelphia was duly approved, entitled "An ordinance to provide for the inspection of passenger and freight elevators," etc., section 3 whereof is as follows:

"Sec. 3. The chief of the bureau of building inspection, subject to the approval of the director of the department of public safety, shall formulate such rules and regulations as may seem necessary for the proper inspection of passenger and freight elevators, and such rules and regulations, when so formulated and promulgated, shall have the same force and effect as if they had been specifically and in detail set forth and provided for in this ordinance. The chief of the bureau of building inspection shall also prescribe such rules and regulations as may seem necessary concerning the performance of the duties of the several inspectors herein provided for, and the other employés who may be appointed under the provisions of this ordinance, subject to the approval of the director of the department."

By authority claimed to have been conferred by this section the defendant Robert C. Hill, chief of the bureau of building inspection, with the approval of the defendant Abraham L. English, director of public safety, promulgated "rules governing the construction, operation, and maintenance of passenger and freight elevators," wherein it was stated that "full automatic gates, wherever found, will be condemned, and must be replaced within a reasonable time by gates approved by this bureau." The natural and actual consequence of this "rule" has been to exclude all full automatic gates of the plaintiff from the Philadelphia market, and to prevent it from doing business as vendor of such gates for use within that city; and the main question in this case is as to the validity of the asserted authority of the defendants, or any of them, to effect this result by such means. In the brief submitted on their behalf it is said:

"Defendants do not contend that the rule against full automatic gates has the force and effect of the ordinance of April 6, 1900, as is therein specifically provided, because councils could not delegate the power given to them by the legislature, but it is merely to be regarded as a rule for the guidance of inspectors, so that their conduct shall be uniform. As to the right to do this, section 4 of the ordinance of 1900 expressly provides that 'the chief of the bureau of building inspection shall also have the power to condemn any mechanical part or appliance connected with any passenger or freight elevator, if the same, in his judgment, is dangerous or unreliable.' "

It may, I think, well be doubted whether the language above quoted from section 4 of the ordinance of April 6, 1900, is indicative of an intent to give to the chief of the bureau of building inspection the power to condemn a whole class of appliances, and this, not upon or after inspection by any of the inspectors appointed under the ordinance, which expressly provides that such inspectors "shall be competent elevator mechanics," nor even by the chief of the bureau himself (who admittedly is not such a mechanic), but solely upon the quite questionable opinion of certain unofficial persons. This point is, however, of minor importance, and need not be decided; for, in my opinion, the councils of the city of Philadelphia would not themselves

have had the power to establish and enforce the rule in question. The general assembly of Pennsylvania did nothing more than invest them with power to regulate management and inspection. It did not, and could not, authorize them to prescribe by general rescript, and without inspection, that no full automatic gates whatever should be erected or maintained. That the police power of a state may be validly exercised by a municipal corporation for the protection of those concerned in the use of such appliances as are here in question is not doubted; but it is well settled that regulations imposed under that power must, with reference to the object of their imposition, be reasonable, and be reasonably applied. They must be rationally discriminative, not excessively and needlessly prohibitory. The rights of the person or persons to be affected are to be regarded, and a court of equity, though not inclined to interfere with the administrative officers of a city in the performance of their duties, will not deny relief from irreparable injury inflicted by them when acting in excess of their lawful authority. City of Philadelphia v. Western Union Tel. Co., 32 C. C. A. 246, 89 Fed. 461; In re Sam Kee (C. C.) 31 Fed. 680; In re Jacobs, 98 N. Y. 98, 50 Am. Rep. 636; Weil v. Ricord, 24 N. J. Eq. 169; City of Evansville v. Miller, 146 Ind. 613, 45 N. E. 1054, 38 L. R. A. 161; Clason v. City of Milwaukee, 30 Wis. 316; State v. Boardman, 93 Me. 73, 44 Atl. 118, 46 L. R. A. 750.

It follows from what has been said that an injunction should issue in substantial accordance with the first, second, and fourth prayers of the bill. But the remaining prayers cannot be granted upon the case now presented. The court cannot undertake to direct or control the defendants' exercise of judgment in specific cases upon which they may hereafter be called upon to act. They should not, I think, be ordered not to condemn the plaintiff's full automatic gates "in any case," except where they are, "by reason of disrepair, dangerous to life or limb," nor for "frivolous reasons," or where they "appear" to be as safe as other gates which have been or may be approved. These matters must, primarily at least, be left with the officers of inspection. If in any instance they shall act unreasonably with respect to any particular gate or gates, and to the plaintiff's injury, it will not be precluded from invoking any remedy which it may be advised it is then entitled to; but an injunction, if now issued, restraining them, in general terms, from acting with groundless discrimination, or upon frivolous reasons, or from unfairly refusing to inspect gates of the plaintiff "for long periods of time," or from denying its rights, or interfering with its business, would, I think, because of its vagueness, be practically incapable of enforcement, and therefore, if for no other reason, ought not to be awarded.

The bill contains no specific prayer for the ascertainment and award of damages; but in its brief the plaintiff, "under its prayer for general relief, asks the court to award it such an amount as the testimony shows it has suffered as a result of the wrongful acts of the defendants," which is said "to be in the neighborhood of four thousand dollars," or, in the alternative, "that the other relief prayed may be granted without prejudice to its right to sue for and recover money damages at law." I think that, under the circumstances of

this case, the latter suggestion should be adopted. I intimate no opinion as to whether the plaintiff is entitled, either at law or in equity, to .a money judgment or decree, but, if entitled to any sum, the amount thereof ought, in my judgment, to be determined by a jury, rather than by this court, either directly or with the assistance of a master. Accordingly, the decree now to be made will be without prejudice to any right which the plaintiff may assert to institute an action at law for the recovery of damages.

A decree in conformity with this opinion, and with costs to the plaintiff, may be prepared and submitted.